| | | |
|---|---|---|
| SUDIE M. GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14 C 2601 |
| | ) | |
| v. | ) | Judge Amy J. St. Eve |
| | ) | |
| MARK S. DIAMOND, et. al, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The Court grants in part without prejudice and denies in part Defendants Mark Diamond's and United Residential Services and Real Estate Inc.'s motion to dismiss [51]. Plaintiff's Amended Complaint as to Count IV is due on or before December 5, 2014.

## STATEMENT

On April 11, 2014, Plaintiff Sudie Green brought the present six-count Complaint against a reverse mortgage lender, a title company, a mortgage broker, and a home repair contractor, among others, seeking to rescind a mortgage pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* Plaintiff also alleges a race discrimination claim pursuant to 42 U.S.C. § 1981 and a Fair Housing Act ("FHA") claim under 42 U.S.C. § 3605, as well as state law claims pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Before the Court is Defendant Mark Diamond's and United Residential Services and Real Estate, Inc.'s ("United") motion to dismiss Counts II, III, and IV of the Complaint brought pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part without prejudice and denies in part Defendants' motion.

## LEGAL STANDARDS

### I.      Federal Rule of Civil Procedure 12(b)(6)

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570).  "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true, *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013), and draw "reasonable inferences in favor of the plaintiffs."  *Teamsters Local Union No. 705 v. Burlington No. Santa Fe, LLC,* 741 F.3d 819, 823 (7th Cir. 2014).

## II.     Federal Rule of Civil Procedure 9(b)

In pleading fraud in federal court, Rule 9(b) imposes a higher pleading standard than that required under Rule 8(a)(2).  *See Bank of America, N.A. v. Knight,* 725 F.3d 815, 818 (7th Cir. 2013); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011).  Specifically, Rule 9(b) requires a pleading to state with particularity the circumstances constituting the alleged fraud, which requires "the who, what, when, where, and how: the first paragraph of any newspaper story."  *Knight,* 725 F.3d at 818 (quotation marks and citation omitted).  "[T]he particularity requirement of Rule 9(b) is designed to discourage a 'sue first, ask questions later' philosophy."  *Pirelli,* 631 F.3d at 441 (citation omitted).  "Heightened pleading in the fraud context is required in part because of the potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled."  *Id.* at 442.

## BACKGROUND

Plaintiff is an 85-year-old widow who lives on a fixed income in a home that she owns at 741 N. Lockwood in the Austin neighborhood of Chicago.  (R. 1, Compl. ¶¶ 4, 78.)  Plaintiff has lived in her home, a two-flat apartment building, for over 40 years.  (*Id.* ¶ 31.)  In addition, Plaintiff asserts that Diamond is a home improvement contractor and is the President of United, which is a home repair remodeling contractor and general contractor.  (*Id.* ¶¶ 5, 6.)

Further, Plaintiff alleges that Diamond has repeatedly engaged in a pattern and practice of fraudulently offering to perform home improvements and then arranging for the financing of those improvements with the intention of obtaining the maximum available mortgage loan proceeds without performing a commensurate amount of work.  (*Id.* ¶ 17.)  Various individual homeowners, the Illinois Attorney General, and the Federal Trade Commission, among others, have sued Diamond and his companies, including United, in state and federal court.  (*Id.* ¶ 18.)  Also, Plaintiff maintains that Diamond and his companies have a decades-long pattern and practice of targeting minority homeowners (especially elderly, African-American homeowners on the west side of Chicago), soliciting them in person through deceptive door-to-door sales techniques for mortgage products and overpriced home repair work that they do not need or cannot afford, and then doing incomplete, shoddy, and defective repair work.  (*Id.* ¶¶ 6, 25.)

At the time of the transaction at issue in this lawsuit, Plaintiff owned her home free and clear of all liens and mortgages.  (*Id.* ¶ 32.)  In 2012, Plaintiff needed some minor repairs done on her property, including repairing a leaky roof, replacing gutters, and repairing the back porch stairs.  (*Id.* ¶ 33.)  Around that time, Diamond visited Plaintiff and explained that he could make

improvements to her home free of charge because there was a special government program for seniors that paid for any such repairs. (*Id*. ¶¶ 35, 36.) Thereafter, Diamond arranged for Plaintiff to obtain a reverse mortgage loan obscuring the fact that Plaintiff's home was the asset that secured the loan and that Plaintiff was taking out a loan in the first instance. (*Id*. ¶¶ 38, 43, 44.)

Plaintiff alleges that the remodeling work did not begin immediately, after which she called Diamond several times asking him to come start the work. (*Id*. ¶ 62.) In late summer of 2012, Diamond had workers or a subcontractor remodel two bathrooms in Plaintiff's home. (*Id*. ¶ 66.) According to Plaintiff, the remodeling work was defective. (*Id*. ¶ 67.) After the two bathrooms were done, Diamond and his workers or subcontractors never returned to perform any further improvements. (*Id*. ¶ 68.)

Once the title company disbursed the mortgage loan proceeds, Diamond and others acting at Diamond's direction, obtained the loan proceeds check in the amount of $122,239.30 without Plaintiff's knowledge or consent. (*Id*. ¶¶ 51, 52.) Plaintiff further alleges that she did not receive any proceeds from the reverse mortgage nor did she authorize the lender to giver her loan proceeds to anyone else. (*Id*. ¶ 54.) According to Plaintiff, Diamond thus received over $122,000 for remodeling Plaintiff's two bathrooms and nothing else, which resulted in a large encumbrance on her property effectively stripping all of the equity out of her home. (*Id*. ¶ 75.) Moreover, interest and fees are accruing on the reverse mortgage loan at more than $6,000 per year. (*Id*. ¶ 77.)

## ANALYSIS

## I.      Count II — Illinois Consumer Fraud Act Claim

In Count II of the Complaint, Plaintiff brings a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq*., against Diamond and United, among others. The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 266 Ill.Dec. 879, 775 N.E.2d 951, 960 (2002)). Under Illinois law, fraud comprises "anything calculated to deceive and may consist of a single act, a single suppression of truth, suggestion of falsity, or direct falsehood, innuendo, look or gesture." *Miller v. William Chevrolet/GEO, Inc.,* 326 Ill.App.3d 642, 648, 762 N.E.2d 1, 260 Ill.Dec. 735 (1st Dist. 2001). Also, "[a]n omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud." *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 504-05, 675 N.E.2d 584, 221 Ill.Dec. 389 (1996). "The elements of a claim under the ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012). Complaints arising from fraudulent activity under the ICFA are subject to the same particularity and specificity rules as claims for common law fraud under Rule 9(b). *See Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014).

In their motion to dismiss, Defendants argue that Plaintiff has failed to plead her ICFA with the particularity required by Rule 9(b). Contrary to Defendants' argument, Plaintiff has sufficiently alleged the who, what, when, where, and how constituting the alleged fraud and deception underlying her ICFA claim. *See Knight,* 725 F.3d at 818. Specifically, Plaintiff alleges that in the course of his trade or business, Diamond solicited Plaintiff and arranged for the reverse mortgage loans and for the home repair and remodeling work contract through United. (Compl. ¶ 98.) According to Plaintiff, over the course of his personal visits to her home before obtaining the reverse mortgages for her, Diamond persuaded her to agree to more work than she actually wanted or needed. (*Id*. ¶ 99.) Plaintiff explains that Diamond was so personable and pleasant that she believed he was going to help her obtain free, government-subsidized home repairs and that he quickly gained her trust and confidence. (*Id*. ¶ 100.) Furthermore, Plaintiff alleges that Diamond failed to provide her with copies of written contracts, itemized contracts, and notices of consumer rights. (*Id*. ¶ 101.) Also, Plaintiff maintains that she never signed a home repair contract with Diamond, or if she signed one, she never received a copy and was never orally given a price or estimated cost of the home repairs. (*Id*. ¶ 103.)

Accordingly, Plaintiff's specific, detailed allegations state with the requisite particularity that Defendants engaged in a course of conduct that constitutes deceptive practices when they knowingly used or employed deception to induce and encourage her to enter into the reverse mortgage, promised performance which defendants did not intend to perform or knew would not be performed, and delivered and obtained plaintiff's loan check through intentional fraud and deception. (*Id*. ¶ 113.) Moreover, viewing the facts and all reasonable inferences in Plaintiff's favor, she has sufficiently alleged her unfairness claim under the ICFA under the federal pleading standards.[1] *See Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010) ("plaintiff must give enough details about the subject-matter of the case to present a story that holds together"). Therefore, the Court denies Defendants' motion to dismiss Plaintiff's ICFA claim as alleged in Count II of the Complaint.

## II.     Count III — Civil Rights Act Claim under 42 U.S.C. § 1981

In Count III of her Complaint, Plaintiff alleges a race discrimination claim based § 1981, which "prohibits racial discrimination in the making and enforcement of private as well as public contracts." *Campbell v. Forest Preserve Dist. of Cook County, Ill.,* 752 F.3d 665, 668 (7th Cir. 2014). Section 1981 provides that "'[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, as is enjoyed by white citizens....' and defines making and enforcing of contracts as 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits,

---

[1] Illinois courts interpret the ICFA in the disjunctive, allowing separate claims for unfair acts or practices and deceptive acts or practices. *See Pappas v. Pella Corp.,* 363 Ill.App.3d 795, 300 Ill.Dec. 552, 844 N.E.2d 995, 1002 (1st Dist. 2006).

privileges, terms, and conditions of the contractual relationship.'" *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006) (quoting 42 U.S.C. § 1981)). More specifically, § 1981 protects against racial discrimination that "blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 476, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006). To state a claim under § 1981, Plaintiff must allege facts supporting the following propositions: (1) she is a member of a racial minority; (2) Defendants intended to discriminate against her based on race; and (3) the discrimination deprived Plaintiff her right to make and enforce a contract. *See Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.,* 409 F.3d 833, 837 (7th Cir. 2005); *see also Pourghoraishi,* 449 F.3d at 756.

Defendants' argument that Plaintiff has failed to sufficiently allege her § 1981 claim under the federal pleading standards is without merit. In her Complaint, Plaintiff alleges that in connection with her loan transaction, Defendants purposefully discriminated against her on the basis of race by targeting and exploiting her because of her perceived vulnerabilities, including her race. (Compl. ¶ 128.) Specifically, Plaintiff alleges that through marketing techniques and other practices, Defendants have a policy of intentionally and disproportionately targeting African-Americans on the south and west sides of Chicago with mortgage loans whose terms are less favorable than the terms given to similarly situated Caucasian borrowers. (*Id*. ¶ 129.) According to Plaintiff, through door-to-door marketing techniques and other practices, Defendants have a policy of intentionally and disproportionately targeting African-Americans with home repair contracts for incomplete, shoddy, defective, and dangerous home repair work. (*Id*. ¶ 130.) Plaintiff further states that Diamond and United have a long-standing pattern and practice of such conduct that is documented in other lawsuits and in consumer complaints lodged with state and federal agencies. (*Id*.) Also, Plaintiff alleges that although she was qualified for reverse mortgage loans and home repair contracts, Defendants arranged for a reverse mortgage that had grossly unfavorable terms to her. (*Id*. ¶¶ 131-32.) In addition, Plaintiff alleges that Diamond does virtually no business with non-minorities, preferring to target elderly African-Americans almost exclusively for his fraudulent schemes. (*Id.* ¶ 133.)

Drawing all reasonable inferences and facts in Plaintiff's favor, these highly detailed allegations state a civil rights claim in the making and enforcing of a contract that is plausible on its face. *See Iqbal,* 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Plaintiff has alleged detailed facts that she is a member of a racial minority, Defendants intended to discriminate against her based on race, and the discrimination impaired Plaintiff's right to make a contract that had favorable terms. Therefore, the Court denies Defendants' motion to dismiss Count III of the Complaint.

## III.    Count IV — Fair Housing Act Claim

In Count IV, Plaintiff alleges that Defendants targeted her and intentionally discriminated against her on the basis of her race and gender in connection with a residential real estate

transaction in violation of the Fair Housing Act ("FHA") under 42 U.S.C. § 3605.  Specifically, § 3605(a), makes it "unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race."  *See Swanson,* 614 F.3d at 406.  The FHA defines "residential real estate-related transactions" to include "the making or purchasing of loans or providing other financial assistance ... for purchasing, constructing, improving, repairing, or maintaining a dwelling."  42 U.S.C. § 3605(b)(1)(A).  The FHA covers discrimination in financing terms related to home repair contracts, and thus Plaintiff's FHA claim is based on her reverse mortgage.  *See Walton v. Diamond,* No. 12 C 4493, 2013 WL 1337334, at *5 (N.D. Ill. Mar. 29, 2013).

In their motion to dismiss, Defendants argue that the FHA does not apply to them because they did not make or purchase the mortgage loan in question.  *See Davis v. Wells Fargo Bank,* 685 F.Supp.2d 838, 844 (N.D. Ill. 2010) ("§ 3605 applies only to transactions involving the 'making or purchasing of loans.'") (quoting 42 U.S.C. § 3605(b)).  Indeed, Plaintiff has not alleged any facts that United or Diamond were directly involved in the "selling, brokering, or appraising" of her property, *see* 42 U.S.C. § 3605(b)(2), although Plaintiff alleges that Defendants misused the loan proceeds after the title company disbursed them.  In other words, there are no allegations that Defendants were directly involved in the actual loan transaction.  *See Davis v. Fenton,* ___F.Supp.2d ___, 2014 WL 544974, at *7 (N.D. Ill. Feb. 7, 2014) ("section 3605 applies only to transactions involving defendants that are lenders, brokers, or appraisers of mortgage loans"); *see also Davis,* 685 F.Supp.2d at 844; *Jones v. Countrywide Home Loans,* Inc., No. 09 C 4313, 2010 WL 551418, at *7 (N.D. Ill. Feb. 11, 2010).  Hence, Plaintiff has not sufficiently alleged an FHA claim against Defendants Diamond and United.

As such, the Court grants in part—without prejudice—Defendants' motion to dismiss Plaintiff's FHA claim as alleged in Count IV and grants Plaintiff leave to amend her allegations, if possible, keeping in mind counsel's Rule 11 obligations.

On a final note, because the Court is not dismissing all of Plaintiff's claims over which the Court has original jurisdiction, the Court need not address Defendants' request for the Court to  relinquish supplemental jurisdiction over Plaintiff's state law claims.  *See* 28 U.S.C. § 1367(c)(3).

**Dated:** November 7, 2014

_____
**AMY J. ST. EVE**
**United States District Court Judge**

6